An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-892

Filed 1 July 2026

Guilford County, Nos. 23CR456535-400, 23CR456539-400, 23CR456532-400, 24CR028051-400

STATE OF NORTH CAROLINA

v.

ALLEN ANTHONY CAMPBELL

Appeal by defendant from judgment entered 12 December 2024 by Judge Jason E. Ramey in Guilford County Superior Court. Heard in the Court of Appeals 3 June 2026.

> *Attorney General Jeff Jackson, by Assistant Attorney General Joonu-Noel Andrews Coste, for the State.*
>
> *Blass Law, PLLC, by Danielle Blass, for defendant.*

ARROWOOD, Judge.

Allen Anthony Campbell ("defendant") appeals from judgment entered after jury trial. Defendant was convicted of felony possession of a firearm by a felon, felony speeding to elude arrest, driving while impaired, transporting an open container of alcohol, and driving while license revoked, and he pleaded guilty to having attained

the status of habitual felon. For the following reasons, we affirm the court's judgment.

## I.    Introduction

At 7:34 p.m. on 10 November 2023, workers at the McDonald's on Randleman Road called the Greensboro Police Department after finding a stopped car in the drive-thru lane with an unconscious man inside. Corporal Wright arrived, followed shortly thereafter by Officer Speller, and the McDonald's employees pointed out the car, a black Ford Taurus with the driver's side window open. Corporal Wright approached the driver's side while Officer Speller shined his light into the car, revealing a dog in the back seat and an alcoholic beverage at the driver's feet.

Corporal Wright's bodycam footage was entered into evidence and is included in the record. It captures him repeating, "Sir, sir, sir," attempting to rouse the unconscious man in the driver's seat, later identified as defendant. Corporal Wright testified that "the vehicle was still in drive" and defendant was unconscious with "his hands in his front pocket." He described the smell of alcohol emanating from the car, the open bottle of Hennessy cognac at defendant's feet, and a dog in the back seat covered in blood.

When the driver stirred, Corporal Wright identified himself as a police officer and asked if defendant was okay. He directed defendant to put the car's transmission in park, "because you're asleep in the drive-thru." Looking into the car, he pointed out the open container to defendant and asked if the dog was okay, and defendant

replied that a stray dog had attacked his dog. Corporal Wright told defendant again to put the car in park, but defendant pointed his hand forward and replied, "I'm going." With his hand on the Ford's door, Corporal Wright told him, "Put it in park. Put it in park. Put it in park. Stop driving." As defendant pulled ahead slowly, Corporal Wright directed him to a row of empty parking spaces and toldu him, "Pull over to the right." However, defendant steered the car toward the parking lot's exit onto Randleman Road.

During this interaction, Officer Segarra-Colon arrived on the scene and exited his patrol car, leaving his blue lights flashing. His bodycam footage was also introduced in evidence and included in the record. When the Ford exited the parking lot, he followed it onto Randleman Road in his patrol car and reactivated his siren. Defendant drove on Randleman Road, reaching approximately ten miles per hour. After about 11 seconds on Randleman Road, defendant re-entered the McDonald's parking lot through an exit, and Officer Segarra-Colon used a "precision immobilization technique" PIT maneuver to stall the Ford after defendant did not immediately pull into a parking spot. Officer Segarra-Colon placed defendant under arrest. While searching defendant, he found a small amount of marijuana.

While waiting for Animal Control to take custody of defendant's injured dog, Officers Asbury and Segarra-Colon observed the open bottle of Hennessy cognac, cash on the Ford's floor, and a black handgun between the driver's door and seat. Once they were able to search the vehicle, Officer Segarra-Colon seized the firearm and

noticed its serial number.

While defendant was seated in the patrol vehicle, Sergeant Luper tested his breath with a portable device which registered the presence of alcohol. No field sobriety test was performed, but Officers Segarra-Colon and Corporal Wright both testified that they believed defendant was intoxicated. Corporal Wright testified: "I knew he had an open container. I knew he had slurred speech. He had already tried to flee one time." He explained that he did not perform a field sobriety test because "animals can try to protect their owners. So I felt for the safety of the officers and him that I had enough to . . . charge him with driving while impaired." Both Officers Speller and Segarra-Colon accompanied defendant to jail, where he vomited on the jail floor and continued to smell of alcohol.

Corporal Wright is certified to use the Intoxilyzer to analyze breath for the presence of alcohol and he made defendant aware of his rights as to the test's administration, including his right to refuse the test, which would require a one-year revocation of his driver's license and allow his refusal to be admitted as evidence. Defendant refused the test. Corporal Wright testified: "[Defendant] uttered jokingly I could have at least let him finish his bottle of Hennessy, and he kind of laughed a little bit and said, 'Hennessy and 1800 will land you in jail.' "

The State charged defendant with felony possession of a firearm by a felon, felony speeding to elude arrest, driving while impaired, transporting an open container of alcoholic beverage, driving while license revoked, and later with having

attained the status of habitual felon.

At trial, the State presented fifteen exhibits, including videos captured by cameras mounted on Officer Speller's and Officer Segarra-Colon's patrol cars and by Officer Asbury's and Corporal Wright's body cams. Evidence also established that defendant's driver's license was already revoked at the time of the incident and that he was previously convicted of a felony in North Carolina.

At the close of State's evidence, defendant moved to dismiss the charges of possession of a firearm by a felon and fleeing to elude DWI. Defendant argued that the vehicle's speed did not exceed ten miles per hour, that the vehicle was stopped by Officer Segarra-Colon's PIT maneuver, and that there was no evidence of a blood alcohol level over 0.14. After the motion was denied, defendant put on no evidence and then unsuccessfully moved to dismiss again.

On the charge of fleeing to elude arrest, the State indicted defendant with three of eight possible aggravating factors: reckless driving as defined by N.C.G.S. § 20-140; driving while license revoked; and gross impairment. During the charge conference, the Court declined to include either instruction on the aggravating factor of "speeding in excess of 15 miles per hour of the legal speed limit" or refer to blood alcohol level on the aggravating factor of gross impairment. Defendant objected to the latter exclusion, but the court heard arguments and determined that it could not "permit the jury to speculate on what his blood alcohol content would have been" because no evidence was introduced on the question and the issue was outside the

jury's competence. Defendant did not object to the instructions about the aggravating factor of driving with a revoked license.

Defendant also objected to the court's instruction on the aggravated factor of reckless driving, arguing again that the State's evidence was insufficient. After watching video evidence again, the court found that there was "enough there for the jury to decide," referring to the officers' testimony that defendant seemed impaired, that defendant drove the car while Corporal Wright was holding onto the Ford's window, and evidence that defendant drove with people around his car and entered the McDonald's through an exit.

The court's instruction on the definition of reckless driving was as follows:

> Reckless driving is defined as any person who drives any vehicle upon a highway or any public vehicular area carelessly and heedlessly in willful or wanton disregard of the rights or safety of others or a person who drives any vehicle upon a highway or any public vehicular area without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property.

The court's instructions on the requirements to find defendant guilty of a felony were as follows:

> If you find from the evidence beyond a reasonable doubt that on the alleged date the defendant operated a motor vehicle on a highway or public vehicular area, while attempting to elude a law enforcement officer who was in the lawful performance of his duties and two or more of the following factors were present: (1) gross impairment of the defendant's faculties due to consumption of an impairing substance; (2) reckless driving; (3) driving while his license

-- while his driver's license is revoked, and the defendant knew or had reasonable grounds to know that the officer was a law enforcement officer, it would be your duty to return a verdict of guilty of felonious operation of a motor vehicle to elude arrest.

After the jury left the courtroom, both parties declined to present requests, additions, or objections to the jury instructions. Defendant was found guilty on all substantive charges, pled guilty to having attained the status of habitual felon, and properly entered notice of appeal.

## II.    Discussion

Defendant argues that the trial court erred in denying his motions to dismiss and in crafting its jury instructions. We discuss his two arguments in turn.

### A.    Defendant's Motion to Dismiss

Defendant argues that the court erred in denying his motion to dismiss the charge of felony speeding to elude arrest due to insufficiency of the State's evidence. We review de novo whether the trial court erred in denying a motion to dismiss. *State v. Smith*, 186 N.C. App. 57, 62 (2007) (citing *State v. McKinnon*, 306 N.C. 288, 298 (1982)). To survive a motion to dismiss for insufficiency of the evidence, the State must present substantial evidence for each essential element of the charged offense and that the defendant was the perpetrator. *State v. Fritsch*, 351 N.C. 373, 378 (2000) (citation omitted). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *State v. Winkler*, 368 N.C. 572, 574 (2015) (citation omitted). The evidence "must be considered in the light most

favorable to the State, and the State is entitled to every reasonable inference therefrom." *In re A.N.C., Jr.*, 225 N.C. App. 315, 324 (2013) (quotation omitted).

The essential elements of misdemeanor speeding to elude arrest are: (1) operating a motor vehicle (2) on a street, highway, or public vehicular area (3) while fleeing or attempting to elude a law enforcement officer (4) who is in the lawful performance of his duties. N.C.G.S. § 20-141.5(a); *State v. Boykin*, 275 N.C. App. 187, 189 (2020). A violation of this statute is felonious if the jury finds the existence of at least two statutory aggravating factors out of eight. *See* N.C.G.S. § 20-141.5(b). Here, the State's indictment alleged three: reckless driving, driving while license revoked, and gross impairment.

It is unchallenged that defendant operated a motor vehicle on a public road and that the officers were acting lawfully, but defendant argues that the state presented insufficient evidence that he was fleeing or attempting to elude police. Defendant asserts that he drove very slowly and "never exceeded 10 mph" when the Ford exited the drive-thru and parking lot, turned right and accelerated on Randleman Road, and returned through the McDonald's exit. He argues that the statute is titled "Speeding to elude arrest" and this "demonstrates the legislature's intent to define the crime to require proof of speeding."

We disagree. The inclusion of "speeding" in the title does not thereby render the statute ambiguous and in need of statutory construction. Whether its title accurately reflects an unambiguous statute's contents has no effect on the law's

validity. *See In re Chisholm's Will*, 176 N.C. 211, 213 (1918) ("Though the caption of a statute may be called in aid of construction, it cannot control the text when it is clear."); *accord In re Appeal of Forsyth County*, 285 N.C. 64, 71 (1974). This statute's plain meaning is crystal clear: the State must present substantial evidence of the vehicle's speed if defendant is charged with the first of eight aggravating factors: "Speeding in excess of 15 miles per hour over the legal speed limit." N.C.G.S. § 20-141.5(b)(1). No such requirement exists where this aggravating factor is not charged, as in the instant case.

Defendant asserts that the State failed to present sufficient evidence that he had the requisite intent to evade police, because sufficiency would have been "impossible or nearly impossible . . . without evidence of speeding, and particularly with uncontroverted evidence of a 'very slow' speed over a very short amount of time." Defendant points to evidence that the Ford "was moving for a maximum total of 43 seconds" during which it "was only on Randleman Road for 11 out of those 43 seconds." Finally, defendant argues that there was insufficient evidence that he was "aware that police were attempting to arrest or apprehend him."

The State was not required to present evidence of any individual circumstance such as speeding or the duration of the attempt to evade. Instead, survival of a motion to dismiss for insufficiency of the evidence requires analysis of the totality of the circumstances. *State v. Montgomery*, 299 N.C. App. 124, 127–28 (2025). Accordingly, we examine whether the State presented enough relevant evidence to

lead a reasonable mind to conclude that, considering the totality of the circumstances, defendant intended to attempt evasion of apprehension or arrest by police.

Here, there is no question that, under the totality of the circumstances, defendant had the requisite knowledge that police were attempting to apprehend him. Corporal Wright's bodycam footage alone is sufficient on this point. The video captures the officer waking defendant while he is asleep with his foot on the brake, announcing that he is a police officer, and expressly describing the open container in plain sight. We hear Corporal Wright giving clear, repeated instructions to put the car in park, and after defendant fails to comply, Corporal Wright instructs him to pull over to the right of the drive-thru lane, where there is a row of empty parking spots. Accordingly, the State presented sufficient evidence that defendant had knowledge of his predicament.

Therefore, we next ask whether the State's evidence about what transpired while defendant had this knowledge could lead a reasonable juror to find the requisite intent. "Intent is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred." *State v. Jackson*, 289 N.C. App. 424, 427 (2023) (quotes and citations omitted). "[I]f the trial court determines that a reasonable inference of the defendant's guilt may be drawn from the evidence, it must deny the defendant's motion and send the case to the jury even though the evidence may also support reasonable inferences of the defendant's

innocence." *State v. Boyd*, 154 N.C. App. 302, 305 (2002) (citing *State v. Matias*, 354 N.C. 549, 551 (2001)).

Here, the evidence was arguably sufficient to support the reasonable inference that defendant was drunkenly confused about Corporal Wright's instructions but did not intend to flee the scene: the Ford did not accelerate on its way onto Randleman Road, and when it did so, it was only for a few seconds before the Ford turned back into the parking lot. However, the evidence also supports the contrary reasonable inference: that when defendant said, "I'm going" and the Ford left the parking lot, he intended to flee until he realized escape was unlikely with Officer Segarra-Colon's patrol car right on his tail with a blasting siren and flashing lights.

Because this inference was possible, even though defendant's intent was short-lived, the court did not err in denying defendant's motion and submitting the case to the jury. Indeed, where the evidence supports two contrary factual inferences, "[c]ontradictions and discrepancies are for the jury to resolve and do not warrant dismissal." *Jackson*, 289 N.C. App. at 427 (quoting *State v. Gibson*, 342 N.C. 142, 150 (1995)). Therefore, the State presented sufficient evidence of all essential elements of misdemeanor speeding to elude arrest.

Defendant next argues that there was insufficient evidence as to two of the charged aggravating factors: gross impairment and reckless driving. As to the former, the State was required to present sufficient evidence to support the conclusion that defendant's faculties were grossly impaired due to *either* the

consumption of an impairing substance *or* a blood alcohol concentration over 0.14 within a relevant time after driving. *See* N.C.G.S. § 20-141.5(b) (emphasis added). We consider the facts of the individual case, for there is no "bright line which will mark once and for all where 'impairment' ends and 'gross impairment' begins." *State v. Stokes*, 174 N.C. App. 447, 454 (2005) (quote and citation omitted).

On this issue, the State's evidence was overwhelming. Defendant was unconscious behind the wheel of a car with his foot on the brake and the gear in drive. The car was stationary in the drive-thru of a McDonald's during dinner hours while the restaurant was serving customers. Officers testified to the strong smell of alcohol, the open bottle of cognac, defendant's unconsciousness and vomiting during the arrest, and defendant's own statements about his intoxication. Moreover, defendant refused his breathalyzer test. The bodycam footage shows that Corporal Wright had to repeatedly greet defendant to wake him and that defendant's words were slurred. The statute does not require the State to present a breathalyzer result showing blood alcohol concentration over 0.14. However, the other evidence presented would indeed suffice to support a reasonable juror's conclusion that defendant was grossly intoxicated due to alcohol throughout these events.

Reckless driving is defined as follows:

> (a) Any person who drives any vehicle upon a highway or any public vehicular area carelessly and heedlessly in willful or wanton disregard of the rights or safety of others shall be guilty of reckless driving.

> (b) Any person who drives any vehicle upon a highway or any public vehicular area without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property shall be guilty of reckless driving.

N.C.G.S. § 20-140. Under G.S. § 15A-1340.16(d), "[e]vidence necessary to prove an element of the offense shall not be used to prove any factor in aggravation, and the same item of evidence shall not be used to prove more than one factor in aggravation."

Setting aside the evidence supporting either the primary offense or gross impairment, the following admitted evidence supported this aggravating factor alone: that the McDonald's was open and serving; that defendant rolled away while Corporal Wright stood in the narrow space between the vehicle and the restaurant with his hand on his car window; that other drivers were on Randleman Road; that he re-entered the McDonald's parking lot through its exit; and that Officer Segarra-Colon executed a PIT maneuver when defendant did not stop.

However, this statute punishes not the fact that a defendant is driving but the quality of his driving. The bodycam videos show that, in the short time the car was in motion, defendant did not drive on Randleman Road "in a manner so as to endanger or be likely to endanger any person or property." Defendant correctly points out his slow speed and that no pedestrians or drivers were affected by his driving. Although he may have briefly attempted to evade the officers, his slow speed and quick decision to return to the McDonald's parking lot ensured that no one was likely to be endangered. Further, Officer Segarra-Colon testified that he judged it necessary to

initiate the PIT maneuver "believing that there might be a pursuit[.]" In other words, the officer's decision was not due to the quality of defendant's driving, but because defendant had not stopped driving.

This leaves us with evidence that defendant entered through the McDonald's exit while no other drivers were attempting to leave the lot, and that Corporal Wright was standing close to the vehicle while defendant took his foot off the brake and the Ford began to creep forward. Viewed in the light most favorable to the State, this evidence would have been insufficient for a reasonable juror to conclude that defendant's conduct behind the wheel of the Ford was "carelessly and heedlessly in willful or wanton disregard of the rights or safety of others" or "in a manner so as to endanger or be likely to endanger any person or property[.]" Accordingly, the court erred in failing to grant defendant's motion to dismiss with regard to the aggravating factor of reckless driving.

Nevertheless, the State was required to prove beyond a reasonable doubt only two or more of the aggravating factors to support defendant's conviction for felonious speeding to elude arrest. N.C.G.S. § 20-141.5(b)*; see also State v. Funchess*, 141 N.C. App. 302, 310 (2000). The State offered sufficient substantial evidence permitting the jury to reach its conclusions as to the essential elements of the offense and the aggravating factors of gross impairment and driving while license revoked. Therefore, we must not disturb either the jury's guilty verdict as to the primary offense or its elevation from a misdemeanor to a felony.

As to the court's error, any further action by this Court is appropriate if and only if the error ultimately prejudiced defendant. N.C.G.S. § 15A-1442(4)(b). If the sentence imposed fell within the presumptive range and therefore could have been the same with or without the erroneous third aggravating factor, defendant will be unable to show that prejudice befell him as a direct result of the error.

At sentencing, defendant pled guilty to having attained the status of habitual felon. As a result, the court was obligated to sentence defendant at a felony class level four classes higher than the statutory class level for the principal felony, and the sentence was to run consecutively with any other sentence. *See* N.C.G.S. § 14-7.6. Here, the Class H level was raised to Class D, and defendant's prior convictions required a Prior Record Level VI for felony sentencing. The court could have selected from the prescribed presumptive range of minimum durations of between 103 and 128 months. *See* N.C.G.S. § 15A-1340.17(c). The court selected, in its discretion, a minimum sentence of 128 months. Because this was within the presumptive range, the court was not obligated to make any written findings as to the aggravating or mitigating factors affecting its decision. N.C.G.S. § 15A-1340.16(c). Therefore, nothing in the record allows defendant to show that the third aggravating factor left any prejudicial effect at the sentencing phase.

While it appears that the court's sentence of almost 23 years for these offenses was out of proportion to the conduct resulting in defendant's conviction, based upon defendant's prior convictions and the relevant statutes, we are unable to find that

defendant has met the high bar to establish an abuse of discretion during the sentencing phase.

## B.     Jury Instructions

Defendant asserts that the trial court erred in charging the jury as to felony speeding to elude arrest based on reckless driving and gross impairment. However, defendant's brief discusses only the court's reckless driving instruction and includes no argument in support of his claim regarding the court's gross impairment instructions. "Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned." N.C. R. App. P. Rule 28(b)(6). Accordingly, we are unable to review the court's jury instructions as to gross impairment. As to reckless driving, because we have found that the court erred in submitting this factor to the jury, it is unnecessary to address the argument as to the instruction.

## III.     Conclusion

For the above reasons, we conclude that the court's denial of defendant's motion to dismiss for insufficient evidence as to the aggravating factor of reckless driving was erroneous but not prejudicial. Therefore, we find defendant received a trial free from prejudicial error.

NO PREJUDICIAL ERROR.

Judges STROUD and COLLINS concur.

Report per Rule 30(e).